## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ADAM SCOTT ARNOLD,** | : | **Civil No. 4:24-CV-1441** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANK BISIGNANO,**[1] | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

## I.    Introduction

Beginning in his childhood, Adam Arnold suffered from a cascading array of significant emotional impairments. These impairments included intermittent explosive disorder, depressive disorder, Asperger syndrome, autism spectrum disorder, oppositional defiant disorder, generalized anxiety disorder, and attention deficit, hyperactivity disorder. (Doc. 19). As a child, Arnold's emotional impairments were deemed so severe that he was awarded childhood disability benefits by the Social Security Administration. Thus, up to the age of eighteen

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

Arnold's emotional impairments were viewed as wholly disabling.

When Arnold turned eighteen in June of 2021, the Social Security Administration conducted a redetermination in his case, as it was required to do by law. That redetermination process ended at the very beginning of the substantive analysis required by law when the Administrative Law Judge (ALJ) concluded at Step 2 of the sequential analysis which applied in Arnold's case that none of his longstanding emotional impairments met the regulatory definition of severe conditions. The ALJ reached this decision and engaged in this truncated redetermination analysis of Arnold's case despite the fact that two experts—the only expert sources who actually treated Arnold—opined that his emotional impairments remained severe and significantly interfered with his ability to function in the workplace.

Faced with this highly abbreviated analysis, we are mindful that in order to meet the step two severity test, an impairment need only cause a slight abnormality that has a more than a minimal effect on the ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921; S.S.R. 96–3p, 85–28. Thus, the Step 2 severity inquiry has aptly been described as a "*de minimus* screening device to dispose of groundless claims." McCrea v. Comm. of Soc. Sec.,370 F.3d 357, 360 (3d Cir. 2004). Therefore, we are cautioned that any doubt as to whether this showing has been made is to be resolved in favor of the applicant, and Step 2 denials of benefits should be reviewed

with close scrutiny. Id. Accordingly, it is axiomatic that: "[B]ecause step two is to be rarely utilized as basis for the denial of benefits, [] its invocation is certain to raise a judicial eyebrow." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 361 (3d Cir. 2004) (citing SSR 85–28, 1995 WL 56856, at *4 ('Great care should be exercised in applying the not severe impairment concept')).

Upon consideration, we find that the ALJ's truncated analysis in this case erred in its Step 2 determination that none of Arnold's impairments met this *de minimis* screening threshold designed to dispose of groundless claims. Arnold's clinical history, his reports and the reports of his mother regarding the severity of his impairments, and the treating source opinions all indicated that his emotional impairments were more than a slight abnormality and had more than a minimal effect on the ability to do basic work activities. Therefore, we find that the ALJ acted prematurely in discounting this claim without further analysis at Step 2 and will remand Arnold's case for a more fulsome redetermination evaluation.

## II.    **Factual History and Procedural Background**

As a child, Adam Arnold suffered from what the Commissioner found to be a constellation of severe and disabling emotional impairments and received supplemental security income benefits based on his disability as a child. (Tr. 17). Arnold attained the age of eighteen on June 6, 2021. (Tr. 19). As a result, by law, Arnold was now subject to a disability redetermination proceeding, where the

severity of his impairments had to be re-examined under the rules applicable to adult disability claimants.

With respect to this redetermination analysis, while the evidence before the ALJ may have been mixed and equivocal regarding the ultimate disabling effect of his otherwise severe emotional impairments, the ALJ never reached this point in his reassessment of Arnold's case. Instead, his analysis began and ended with a Step 2 finding that Arnold suffered from *no* severe impairments. This was error since we find that substantial evidence revealed, at a minimum, that Arnold still experienced severe emotional impairments as an adult, conditions which caused more than a slight abnormality and had more than a minimal effect on his ability to do basic work activities.

The evidence supporting a Step 2 finding that Arnold's emotional impairments remained severe came from a variety of sources. At the outset, Arnold's own description of the impact of these emotional impairments upon his ability to perform sustained work plainly supported a Step 2 threshold finding that his conditions were severe. For example, Arnold explained that educationally he had an IEP in high school, received extra help in class, and was provided one-on-one assistance when completing tasks. Arnold also candidly admitted that he had held two part-time jobs but described how he lost those jobs when he became frustrated because he was not meeting his employer's expectations. Arnold also explained that

he was receiving regular mental health treatment from a therapist and psychiatrist, but continued to experience anger outbursts, outbursts which were exacerbated by work stress. Arnold also described an array of symptoms which he continued to encounter which interfered with his ability to work. These symptoms included: racing thoughts; the need for frequent and prolonged breaks when under stress; trouble with concentration and focus when he has angry outbursts; difficulties sleeping; daily arguments; weekly panic attacks triggered by stress; and problems maintaining focus and remaining on task. (Tr. 41-54).

Arnold's description of the severe nature of his impairments was confirmed, in part, by the third-party reports of his mother, Jamie Arnold. (Tr. 264-72). Mrs. Arnold described difficulties her son experienced with personal care, where he had to be reminded to bathe and brush his teeth. (Id.) She also recounted his challenges in terms of concentration, completing tasks, understanding instructions, and cooperating with others noting that "Adam's aggression [sic] has gotten worse since he has gotten older." (Tr. 270).

In addition, the two medical sources who actually treated Arnold on a sustained basis, Rhonda Slinghoff, CRNP, and Amie Jumper, LPC, both agreed that Arnold's emotional impairments met the threshold severity standards prescribed by the Commissioner's regulations. (Tr. 896-906). CRNP Slinghoff found that Arnold was extremely impaired in terms of his ability to work independently, (Tr. 898);

5

found that he suffered from marked to extreme impairments in multiple spheres of workplace functioning, (Tr. 898-901); and would be off task 20% of the time while missing 5 days of work each month. (Tr. 901). LPC Jumper, in turn, found that Arnold experienced moderate to marked impairment in a series of work-related activities, (Tr. 903-06), and opined that: "I do not believe that [Arnold] can maintain [a] 40-hour per week job." (Tr. 906).

Notably, these were the only treating source opinions presented to the ALJ, and both opinions clearly defined Arnold's ongoing emotional impairments as severe, as that term is defined at Step 2 of the sequential analysis which governs disability claims. Moreover, while the ALJ discounted these treating source opinions in his Step 2 analysis based upon perceived discrepancies between the opinions and treatment notes, with respect to this threshold screening standard for disability claims, the clinical record provided some support for a determination that Arnold's emotional impairments were still severe. Specifically, these treatment notes documented instances of: anxious, loud, repetitive, and tangential behavior; ongoing issues with panic and impulsivity, as well as anger outbursts; difficulty getting to work on time and working independently; mood and behavior fluctuations; clinically significant findings regarding hyperactivity, aggression, depression and attention problems; increased anxiety related to employment, coupled with difficulties maintaining employment; poor hygiene; and impulsive and oppositional behaviors

during treatment. (Tr. 365-368, 404, 421, 422, 434, 439-441, 516, 541, 556, 560, 579, 602, 605, 660, and 861).

It was against this backdrop that the ALJ made his Step 2 determination that the same conditions which rendered Arnold wholly disabled as a child no longer even amounted to severe conditions under the *de minimis* standards prescribed by law once he attained the age of eighteen.

Following two hearings conducted in January and August of 2023, (Tr. 32-59), the ALJ entered a redetermination decision on September 26, 2023, which denied Arnold continued disability benefits. (Tr. 14-31). In that decision, the ALJ acknowledged that Arnold continued to suffer from the same array of mental impairments which had led to a disability determination as a child. Thus, the ALJ found that Arnold experienced the following medically determinable impairments: intermittent explosive disorder, depressive disorder, Asperger syndrome, oppositional defiant disorder, generalized anxiety disorder, and attention deficit/hyperactivity disorder. (Tr. 19). However, at Step 2 of the ALJ's analysis, the ALJ found that none of these previously disabling impairments even rose to the level of a severe condition warranting further evaluation. (Id.)

In reaching this Step 2 determination, the ALJ acknowledged but discounted the body of evidence which supported a threshold, *de minimis*, assessment that these impairments were sufficiently significant that further scrutiny was justified. Thus,

the ALJ noted that Arnold had described his impairments as severe but concluded that description was not fully credible. (Tr. 20-22). The ALJ also conceded that every treating source opined that Arnold's impairments were severe but found this treating source consensus unpersuasive in terms of establishing the *de minimis* standard of impairment required at Step 2. (Tr. 24). Finally, the ALJ's Step 2 analysis—which should only have determined whether this was a plainly groundless claim—indulged in a credibility evaluation of the plaintiff's mother, who also described his symptoms as significant. (Tr. 25).

Having reached the conclusion that none of Arnold's previously disabling impairments were even severe, the ALJ went no further. Instead, the evaluation of this claim began and ended at Step 2 with a summary rejection of Arnold's continuing disability. (Tr. 25).

This appeal followed. On appeal, Arnold contends, *inter alia*, that the ALJ's Step 2 evaluation was flawed. Recognizing that "because step two is to be rarely utilized as basis for the denial of benefits, [] its invocation is certain to raise a judicial eyebrow," McCrea., 370 F.3d at 361, we agree and will remand for a more fulsome evaluation of this claim.

III.    **Discussion**

## A.    <u>Standard of Review-The Roles of the ALJ and this Court</u>

As a minor who had previously been found disabled, by law Arnold was required to undergo and disability redetermination when he reached the age of eighteen. In this redetermination process, Arnold's disability claim must be re-evaluated based upon the adult disability standards prescribed by the Commissioner. These adult disability standards follow a familiar five-step process.

Once that administrative decision has been made, resolution of any social security appeal involves consideration of the respective roles of two adjudicators—the ALJ and this Court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); <u>see also</u> 20 C.F.R. §416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a

five-step sequential evaluation process. 20 C.F.R. §416.920(a). Under this process, the ALJ must sequentially determine whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment; (4) the claimant is able to do his or her past relevant work; and (5) the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §416.920(a)(4).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. §1382c(a)(3)(H)(i) (incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Notably, the Third Circuit Court of Appeals has recognized that the burden placed on an applicant at step two of this process is not exacting, and that "[a]ny doubt as to whether this showing has been made is to be resolved in favor of the applicant." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357 (3d Cir. 2004) (quoting SSR 85-28, 1985 WL 56856, at *3).

Once the ALJ makes a disability determination, it is then the responsibility of this Court to independently review that finding. In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review. In an

action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Thus, when reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not

whether a plaintiff is disabled, but whether the Commissioner's finding that the claimant is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 U.S. Dist. LEXIS 31292 at *1 (M.D. Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and

an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

On this score one other rule applies. When evaluating the legal sufficiency of an ALJ decision it is axiomatic that that "[w]hen a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Accordingly, we should remand for further consideration whenever the record reveals that evidence was discounted by the ALJ for the wrong reason or no reason.

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

These principles apply with particular force to an ALJ's Step 2 determinations. Step 2 of this sequential analysis is typically the first substantive benchmark an ALJ must address and is governed by familiar legal standards:

With respect to this threshold showing of a severe impairment, the showing required by law has been aptly described in the following

terms: "In order to meet the step two severity test, an impairment need only cause a slight abnormality that has no more than a minimal effect on the ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921; S.S.R. 96–3p, 85–28. The Third Circuit Court of Appeals has held that the step two severity inquiry is a *'de minimus* screening device to dispose of groundless claims.' <u>McCrea v. Comm. of Soc. Sec.</u>,370 F.3d 357, 360 (3d Cir.2004); <u>Newell v. Comm. of Soc. Sec.</u>, 347 F.3d 541, 546 (3d Cir.2003). 'Any doubt as to whether this showing has been made is to be resolved in favor of the applicant.' <u>Id</u>*."* <u>Velazquez v. Astrue</u>, No. 07–5343, 2008 WL 4589831, *3 (E.D.Pa., Oct.15, 2008). Thus, "[t]he claimant's burden at step two is 'not an exacting one.' <u>McCrea v. Comm'r of Soc. Sec.</u>, 370 F.3d 357, 360 (3d Cir.2004). This step should be 'rarely utilized' to deny benefits. Id. at 361. Rather, ... [a]n individual should be denied benefits at step two only if the impairment he presents is a 'slight abnormality' that has 'no more than a minimal effect on [his] ability to work.' <u>Id</u>*."* <u>Kinney v. Comm'r of Soc. Sec.</u>, 244 F. App'x 467, 469–70 (3d Cir.2007). Accordingly, "[d]ue to this limited function, the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." <u>McCrea v. Commissioner of Social Sec.</u>, 370 F.3d 357, 360 (3d Cir.2004).

<u>Dotzel v. Astrue</u>, No. 1:12-CV-1281, 2014 WL 1612508, at *4 (M.D. Pa. Apr. 22, 2014).

Simply put, "because step two is to be rarely utilized as basis for the denial of benefits, [] its invocation is certain to raise a judicial eyebrow." <u>McCrea v. Comm'r of Soc. Sec.</u>, 370 F.3d 357, 361 (3d Cir. 2004) (citing SSR 85–28, 1995 WL 56856, at *4 ('Great care should be exercised in applying the not severe impairment concept')). Likewise, where there is a flawed analysis of mental and emotional impairments remand is appropriate whenever the reviewing court cannot determine

whether the ALJ's decision is supported by substantial evidence. See, e.g., Jerro v. Colvin, No. CV 15-3775-DFM, 2016 U.S. Dist. LEXIS 86855, at *9 (C.D. Cal. July 5, 2016) (remanding SSI appeal because "the ALJ failed to explicitly address or provide specific and legitimate reasons for rejecting the treating physicians' diagnosis about Plaintiff's schizoaffective disorder."); Childs v. Colvin, No. 1:14-CV-00462 (MAT), 2016 U.S. Dist. LEXIS 37840, at *9-*10 (W.D.N.Y. Mar. 23, 2016) ("The ALJ's failure to consider plaintiff's schizoaffective disorder at both steps two and three of the sequential evaluation process constituted reversible error because a full consideration of plaintiff's disorder could have affected the outcome of her application."); Johnson v. Colvin, No. 3:13-cv-301, 2014 U.S. Dist. LEXIS 162255, at *24-*25 (S.D. Ohio Nov. 19, 2014) (remanding SSI claim because the ALJ failed to address plaintiff's diagnosis of schizoaffective disorder, which occurred after plaintiff filed her initial SSI claim, and noting that "[r]egardless of whether [the diagnosis] was a severe impairment or not, the ALJ's failure to consider all of Plaintiff's mental impairments when assessing Plaintiff's residual functional capacity constituted error."); Sykes v. Colvin, No. CV 12-1171, 2013 U.S. Dist. LEXIS 122243, at *4-*5 (C.D. Cal. Aug. 26, 2013) (remanding SSI claim because ALJ did not consider medical records containing a diagnosis of schizoaffective disorder, which plaintiff filed after an administrative hearing); Nosse v. Astrue, No.: 08-cv-1173, 2009 U.S. Dist. LEXIS 84944, at *45-45 (W.D. Pa. Sept. 17, 2009)

("Until the ALJ explains why plaintiff's mental conditions are not severe . . . and provides reasons for rejecting [doctor's] diagnoses and opinions, the court is unable to determine whether the ALJ's RFC determination is supported by substantial evidence.").

It is against these legal guideposts that we assess Arnold's case.

**B.    This Case Should be Remanded for Further Assessment of the Plaintiff's Emotional Impairments.**

In this case, the ALJ determined at Step 2 of the five-step sequential analysis that applies to Social Security cases that Arnold's constellation of emotional impairments—which had been found totaling disabling as a child—were no longer even considered severe under the forgiving, *de minimis* standard prescribed at Step 2 of this familiar five-step paradigm. In concluding that Arnold no longer suffered from any severe mental impairments, the ALJ gave great credence to the summary reports of state agency experts, and a one-time examining source opinion, which were dated in 2022. However, those assessments were made based upon an incomplete clinical record and did not have the opportunity to fully take into account the treating sources' notes and opinions from 2023 which described a greater level of mental impairment on Arnold's part.

In our view, more is needed here before these potentially significant intellectual impairments may be wholly discounted at Step 2. Rather, we believe that the ALJ erred in failing to identify Arnold's intermittent explosive disorder,

16

depressive disorder, Asperger syndrome, autism spectrum disorder, oppositional defiant disorder, generalized anxiety disorder, and attention deficit, hyperactivity disorder as severe in Step 2 of the five-step analytical paradigm that governs this social security appeal. On this score, it is well-settled that this Step 2 inquiry is a *"de minimus* screening device to dispose of groundless claims." <u>McCrea v. Comm. of Soc. Sec</u>*.,* 370 F.3d 357, 360 (3d Cir. 2004); <u>Newell v. Comm. of Soc. Sec</u>*.,* 347 F.3d 541, 546 (3d Cir. 2003). Accordingly, "[a]ny doubt as to whether this showing has been made is to be resolved in favor of the applicant," <u>id.</u>; the claimant's burden at step two is "not an exacting one," <u>id.</u>; and this step should be "rarely utilized" to deny benefits. <u>Id</u>. at 361. Further, "the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." <u>Id.</u> at 360. As part of this "close scrutiny," it is clear that we cannot sustain a step two benefit denial decision that fails to adequately address material evidence in the record which supports that disability claim. <u>See</u> <u>Kinney v. Comm'r of Soc. Sec.</u>, 244 F. App'x 467, 470 (3d Cir. 2007).

Here, there was significant, material evidence which indicated that Arnold's constellation of emotional impairments remained severe, as that term is used at Step 2 of any disability analysis, since they had more than a minimal impact on his ability to meet the emotional demands of the workplace on a number of scores. Given the *"de minimus"* nature of the claimant's burden at Step 2, acknowledging that "[a]ny

doubt as to whether this showing has been made is to be resolved in favor of the applicant," and accepting that the claimant's burden at step two is "not an exacting one," McCrea, 370 F.3d at 360, we believe that the ALJ erred in not considering these previously disabling mental conditions to be severe at Step 2.

Nor can we treat this error as harmless in the facts of this case. In this regard "we apply harmless error analysis cautiously in the administrative review setting." Fischer–Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). Thus:

> In Social Security appeals courts may apply harmless error analysis when assessing the sufficiency of an ALJ's decision. Seaman v. Soc. Sec. Admin., 321 Fed.Appx. 134, 135 (3d Cir. 2009). "Under the harmless error rule, an error warrants remand if it prejudices a party's 'substantial rights.' An error implicates substantial rights if it likely affects the outcome of the proceeding, or likely affects the 'perceived fairness, integrity, or public reputation of judicial proceedings.'" Hyer v. Colvin, 72 F. Supp. 3d 479, 494 (D. Del. 2014).

Harrison v. Berryhill, No. 3:17-CV-618, 2018 WL 2051691, at *5 (M.D. Pa. Apr. 17, 2018), report and recommendation adopted, No. 3:17-CV-0618, 2018 WL 2049924 (M.D. Pa. May 2, 2018). While Step 2 errors can in some instances be deemed harmless, the key to a harmless error evaluation of a Step 2 error turns on whether the plaintiff's conditions received any further substantive consideration at subsequent stages of analysis. As we have observed on this score:

> [E]ven if an ALJ erroneously determines at step two that one impairment is not "severe," the ALJ's ultimate decision may still be based on

substantial evidence if the ALJ considered the effects of that impairment at steps three through five. However, where it appears that the ALJ's error at step two also influenced the ALJ's RFC analysis, the reviewing court may remand the matter to the Commissioner for further consideration. See Nosse v. Astrue, No. 08–[CV–1173, 2009 WL 2986612, *10] (W.D.Pa. Sept.17, 2009).

Stouchko v. Comm'r of Soc. Sec., No. 1:12-CV-1318, 2014 WL 888513, at *10 (M.D. Pa. Mar. 6, 2014) (quoting McClease v. Comm. of Soc. Sec., No. 8–CV–1673, 2009 WL 3497775, *10 (E.D. Pa. Oct. 28, 2009)). See also Salles v. Comm. of Soc. Sec., 229 Fed. App'x 140, 145, n. 2 (3d Cir. 2007) (citing Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her impairments were non-severe, any error was harmless.").

However, in this case, the ALJ's redetermination decision both began and ended at Step 2 with a finding that impairments which were described by Arnold, supported by his mother, and confirmed by every treating source as severe, did not meet minimal threshold prescribed by law. In the absence of any further evaluation of Arnold's case by the ALJ, we are left at sea and may not give the Commissioner the benefit of the safe harbor afforded by the harmless error doctrine. Simply put, more is needed here. Since the ALJ's burden of articulation is not met in the instant case, this matter should be remanded for further consideration by the Commissioner. Yet, while we reach this result, we note that nothing in this Report and

Recommendation should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

## IV. <u>**Conclusion**</u>

For the foregoing reasons the decision of the Commissioner in this case will be REMANDED for further consideration.

An appropriate order follows.

<u>/s/ *Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

DATED: August 26th, 2025.